Harvey K. HUIE, Jr., Individually, as Independent Executor of the Estate of Adeline M. Huie, Deceased, and as Trustee of the Melissa Huie Chenault Trust, Relator

v.

The Honorable Nikki DeSHAZO, Judge, Respondent.

No. 95–0873.

Supreme Court of Texas.

Argued Nov. 30, 1995.

Decided Feb. 9, 1996.

Rehearing Overruled June 28, 1996.

G. David Ringer, Timothy D. Zeiger, Michael D. McKinley, Dallas, Douglas W. Alexander, Austin, Dwight M. Francis, Dallas, for Relator.

Donovan Campbell, Jr., T. Wesley Holmes, James J. Hartnett, Jr., James J. Hartnett, Sr., Jack M. Kinnebrew, Gary E. Clayton, and Kim Kelly Lewis, Dallas, for Respondent.

Jay J. Madrid, R. Gregory Brooks, Madrid, Corallo & Brooks, P.C., Dallas, for J. Peter Kline, Robert L. Miars, John A. Beckert, Richard N. Beckert, Edward J. Rohling, Jack Craycroft and Harvey Hotel Corp.

Chief Justice PHILLIPS delivered the opinion of the Court, in which all Justices join.

The issue presented in this original mandamus proceeding is whether the attorney-client privilege protects communications between a trustee and his or her attorney relating to trust administration from discovery by a trust beneficiary. We hold that, notwithstanding the trustee's fiduciary duty to the beneficiary, only the trustee, not the trust beneficiary, is the client of the trustee's attorney. The beneficiary therefore may not discover communications between the trustee and attorney otherwise protected under Texas Rule of Civil Evidence 503. Because the trial court ruled otherwise, we conditionally grant writ of mandamus.

I

Harvey K. Huie, the relator, is the executor of the estate of his deceased wife, who died in 1980. Huie is also the trustee of

three separate testamentary trusts created under his wife's will for the primary benefit of the Huies' three daughters. One of the daughters, Melissa Huie Chenault, filed the underlying suit against Huie in February 1993 for breach of fiduciary duties relating to her trust.[1] Chenault claims that Huie mismanaged the trust, engaged in self-dealing, diverted business opportunities from the trust, and commingled and converted trust property. Huie's other two daughters have not joined in the lawsuit.

Chenault noticed the deposition of Huie's lawyer, David Ringer, who has represented Huie in his capacity as executor and trustee since Mrs. Huie's death. Ringer has also represented Huie in many other matters unrelated to the trusts and estate during that period. Before Chenault filed suit, Ringer was compensated from trust and estate funds for his fiduciary representation. Since the suit, however, Huie has personally compensated Ringer for all work.

Although Ringer appeared for deposition, he refused to answer questions about the management and business dealings of the trust, claiming the attorney-client and attorney-work-product privileges. Chenault subsequently moved to compel responses, and Huie moved for a protective order. After an evidentiary hearing, the trial court held that the attorney-client privilege did not prevent beneficiaries of the trust from discovering pre-lawsuit communications between Huie and Ringer relating to the trust. The court's order, signed July 19, 1995, does not cite to any of the exceptions under Texas Rule of Civil Evidence 503 or otherwise disclose the court's rationale.[2] The court held that the attorney-client privilege protected only communications made under the following circumstances: 1) a litigious dispute existed between Chenault and Huie; 2) Huie obtained legal advice to protect himself against

charges of misconduct; and 3) Huie paid for the legal counsel without reimbursement from the estate or trust. The court accordingly ordered Ringer to answer questions relating to events before February 1993, when suit was filed and Huie began personally compensating Ringer. The court also held that the attorney-work-product privilege did not apply to communications made before Chenault filed suit, again without stating its reasoning.

The court of appeals, after granting Huie's motion for leave to file petition for writ of mandamus, subsequently vacated that order as improvidently granted, denying relief. After Huie sought mandamus relief from this Court, we stayed Ringer's deposition pending our consideration of the merits.

## II

■ The attorney-client privilege protects from disclosure confidential communications between a client and his or her attorney "made for the purpose of facilitating the rendition of professional legal services to the client...." TEX.R.CIV.EVID. 503(b). This privilege allows "unrestrained communication and contact between an attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal proceeding." *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978). The privilege thus "promote[s] effective legal services," which "in turn promotes the broader societal interest of the effective administration of justice." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 160 (Tex.1993).

The Texas Trust Code provides that "[a] trustee may employ attorneys ... reasonably necessary in the administration of the trust estate." TEX.PROP.CODE § 113.018. Che-

---

1. Chenault sued individually, as next friend of her minor daughter, and as next friend of her minor niece, who is under Chenault's conservatorship. Chenault also named several business associates of Huie as additional defendants.

2. The trial court initially relied on Texas Rule of Civil Evidence 503(d)(5), which creates an excep-

tion to the attorney-client privilege as between joint clients of an attorney regarding matters of common interest to the clients. The court, however, later amended its order to delete this reference.

nault does not dispute that Huie employed Ringer to assist Huie in the administration of the Chenault trust. Indeed, Chenault does not seriously dispute that an attorney-client relationship existed between Huie and Ringer about trust matters.[3] Further, Rule 503 contains no exception to the privilege for fiduciaries and their counsel. Chenault nonetheless contends that communications between Huie and Ringer regarding trust matters cannot be privileged as to Chenault, a trust beneficiary, even if the elements of Rule 503 are otherwise met. Chenault's primary argument is that Huie's fiduciary duty of disclosure overrides any attorney-client privilege that might otherwise apply.

■ ▆▆ Trustees and executors owe beneficiaries "a fiduciary duty of full disclosure of all material facts known to them that might affect [the beneficiaries'] rights." *Montgomery v. Kennedy,* 669 S.W.2d 309, 313 (Tex. 1984). *See also* TEX.PROP.CODE § 113.151(a) (requiring trustee to account to beneficiaries for all trust transactions). This duty exists independently of the rules of discovery, applying even if no litigious dispute exists between the trustee and beneficiaries.

Chenault argues that the trustee's duty of disclosure extends to any communications between the trustee and the trustee's attorney. The fiduciary's affairs are the beneficiaries' affairs, according to Chenault, and thus the beneficiaries are entitled to know every aspect of Huie's conduct as trustee, including his communications with Ringer. We disagree.

▆▆ The trustee's duty of full disclosure extends to all *material facts* affecting the beneficiaries' rights. Applying the attorney-client privilege does not limit this duty. In Texas, the attorney-client privilege protects confidential communications between a client and attorney made for the purpose of facilitating the rendition of professional legal services to the client. *See* TEX.R.CIV.EVID.

503(b). While the privilege extends to the entire communication, including facts contained therein, *see GAF Corp. v. Caldwell,* 839 S.W.2d 149, 151 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding); 1 STEVEN GOODE ET. AL, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 503.5 n. 15 (1993), a person cannot cloak a material fact with the privilege merely by communicating it to an attorney. *See, e.g., National Tank Co. v. Brotherton,* 851 S.W.2d 193, 199 (Tex.1993).

This distinction may be illustrated by the following hypothetical example: Assume that a trustee who has misappropriated money from a trust confidentially reveals this fact to his or her attorney for the purpose of obtaining legal advice. The trustee, when asked at trial whether he or she misappropriated money, cannot claim the attorney-client privilege. The act of misappropriation is a material fact of which the trustee has knowledge independently of the communication. The trustee must therefore disclose the fact (assuming no other privilege applies), even though the trustee confidentially conveyed the fact to the attorney. However, because the attorney's only knowledge of the misappropriation is through the confidential communication, the attorney cannot be called on to reveal this information.

Our holding, therefore, in no way affects Huie's duty to disclose all material facts and to provide a full trust accounting to Chenault, even as to information conveyed to Ringer. In the underlying litigation, Chenault may depose Huie and question him fully regarding his handling of trust property and other factual matters involving the trust. Moreover, the attorney-client privilege does not bar Ringer from testifying about factual matters involving the trust, as long as he is not called on to reveal confidential attorney-client communications.

The *communications* between Ringer and Huie made confidentially and for the purpose

---

**3.** Chenault argues for the first time in a postsubmission brief that Ringer represented the trust itself as an entity, rather than Huie as

trustee. This argument is addressed in section III–B below.

of facilitating legal services are protected. The attorney-client privilege serves the same important purpose in the trustee-attorney relationship as it does in other attorney-client relationships. A trustee must be able to consult freely with his or her attorney to obtain the best possible legal guidance. Without the privilege, trustees might be inclined to forsake legal advice, thus adversely affecting the trust, as disappointed beneficiaries could later pore over the attorney-client communications in second-guessing the trustee's actions. Alternatively, trustees might feel compelled to blindly follow counsel's advice, ignoring their own judgment and experience. *See In re Prudence–Bonds Corp.*, 76 F.Supp. 643, 647 (E.D.N.Y.1948) (concluding that, without the privilege, "the experience in management and best judgment by [the trustee] is put aside … which, in the end may result in harm to the [beneficiaries]").

Chenault relies on *Burton v. Cravey*, 759 S.W.2d 160 (Tex.App.—Houston [1st Dist.] 1988, no writ), for the proposition that the attorney-client privilege does not apply where a party has a right to information independently of the rules of discovery. In *Burton*, condominium owners filed a trial court mandamus action against the condominium association to enforce their statutory right to inspect the association's books and records. *See* TEX.PROP.CODE § 81.209; TEX. REV.CIV.STAT.ANN. art. 1396–2.23. The trial court allowed inspection of the records, including those in the possession of the association's attorney, finding as a factual matter that the attorney's records constituted part of the association's records. The court of appeals affirmed, holding that the attorney-client privilege did not apply in light of the owners' unqualified right of inspection. 759 S.W.2d at 162.

It is unclear whether the records at issue in *Burton* were merely records of the association in the possession of the attorney, or whether they contained separate confidential attorney-client communications. To the extent that they consisted of the former, we agree that they were not protected. *See Brotherton*, 851 S.W.2d at 199. However, to the extent that the court held that the owners' statutory right of inspection somehow trumped the privilege for confidential attorney-client communications, we disapprove of its holding, for the reasons previously discussed. We also disapprove of the court's dicta that the trial court could, in its discretion, decline to apply the attorney-client privilege even if all the elements of Rule 503 were met. *See* 759 S.W.2d at 162.

Chenault also relies on a study by the Section of Real Property, Probate and Trust Law of the American Bar Association, entitled *Report of the Special Study Committee on Professional Responsibility—Counselling the Fiduciary. See* 28 REAL PROP., PROB. & TR.J. 823 (1994). This study concludes that, while counsel retained by a fiduciary ordinarily represents only the fiduciary, the counsel should be allowed to disclose confidential communications relating to trust administration to the beneficiaries. *Id.* at 849–850. The study reasoned as follows:

> The fiduciary's duty is to administer the estate or trust for the benefit of the beneficiaries. A lawyer whose assignment is to provide assistance to the fiduciary during administration is also working, in tandem with the fiduciary, for the benefit of the beneficiaries, and the lawyer has the discretion to reveal such information to the beneficiaries, if necessary to protect the trust estate. The interests of the beneficiaries should not be compromised by a barrier of confidentiality.

*Id.* Several English common-law cases, and treatises citing those cases, also support this view. *See, e.g., In re Mason*, 22 Ch.D. 609 (1883); *Talbot v. Marshfield*, 2 Dr. & Sm. 549 (1865); *Wynne v. Humbertson*, 27 Beav. 421 (1858). *See also* BOGART, THE LAW OF TRUSTS AND TRUSTEES, § 961 (2nd. ed. 1983); SCOTT, THE LAW OF TRUSTS, § 173 (3rd ed. 1967).

We decline to adopt this approach. We find the countervailing arguments supporting application of the privilege, discussed previously, more persuasive. Moreover, Rule 503 contains no exception applicable to fiduciaries

and their attorneys. If the special role of a fiduciary does justify such an exception, it should be instituted as an amendment to Rule 503 through the rulemaking process. Ringer testified that he had the "fullest expectation" that his communications with Huie would be privileged. This expectation was justified considering the express language of Rule 503 protecting confidential attorney-client communications. We should not thwart such legitimate expectations by retroactively amending the rule through judicial decision.

■ We thus hold that, while a trustee must fully disclose material facts regarding the administration of the trust, the attorney-client privilege protects confidential communications between the trustee and his or her attorney under Rule 503.[4]

### III

### A

■ We also reject the notion that the attorney-client privilege does not apply because there was no true attorney-client relationship between Huie and Ringer. This argument finds support in some other jurisdictions, where courts have held that an attorney advising a trustee in connection with the trustee's fiduciary duties in fact represents the trust beneficiaries. Accordingly, the trustee has no privilege to withhold confidential communications from the beneficiaries. *See, e.g., Wildbur v. ARCO Chemical Co.,* 974 F.2d 631 (5th Cir.1992); *United States v. Evans,* 796 F.2d 264 (9th Cir. 1986); *In the Matter of Torian,* 263 Ark. 304, 564 S.W.2d 521 (1978); *Riggs Nat'l Bank of Washington v. Zimmer,* 355 A.2d 709 (Del.Ch.1976); *In re Hoehl's Estate,* 181 Wis. 190, 193 N.W. 514 (1923). The court in *Riggs* reasoned as follows:

> As a representative for the beneficiaries of the trust which he is administering, the

trustee is not the real client in the sense that he is personally being served. And, the beneficiaries are not simply incidental beneficiaries who *chance* to gain from the professional services rendered. The very intention of the communication is to aid the beneficiaries.... In effect, the beneficiaries were the clients of [the trustees' attorney] as much as the trustees were, and perhaps more so.

355 A.2d at 713–14.

■ We conclude that, under Texas law at least, the trustee who retains an attorney to advise him or her in administering the trust is the real client, not the trust beneficiaries. *See Thompson v. Vinson & Elkins,* 859 S.W.2d 617 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (beneficiary lacked standing to sue trustee's attorney for malpractice, as no attorney-client relationship existed between them). "Client" is defined under Rule 503 as

> a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him.

TEX.R.CIV.EVID. 503(a)(1). It is the trustee who is empowered to hire and consult with the attorney and to act on the attorney's advice. While Huie owes fiduciary duties to Chenault as her trustee, he did not retain Ringer to represent Chenault, but to represent himself in carrying out his fiduciary duties. Ringer testified, for example, that he has "never given any legal advice to Mrs. Chenault," and in fact had only seen her on a few isolated occasions. It would strain reality to hold that a trust beneficiary, who has no direct professional relationship with the trustee's attorney, is the real client. *See In re Prudence–Bonds Corp.,* 76 F.Supp. 643 (E.D.N.Y.1948); *Shannon v. Superior Court,*

---

4. Chenault also argues that Huie, by accepting the appointment as trustee with knowledge of his duty of disclosure, impliedly waived the protection of the attorney-client privilege. Because we conclude that a trustee does not violate the duty of full disclosure by invoking the attorney-client privilege, we reject this waiver argument.

217 Cal.App.3d 986, 266 Cal.Rptr. 242, 246 (1990). We thus hold that Huie, rather than Chenault, was Ringer's client for purposes of the attorney-client privilege.

## B

Chenault also advances an argument on post-submission brief to this Court that the *trust* itself was Ringer's real client. This approach, however, is inconsistent with the law of trusts. Mrs. Huie created the testamentary trusts by devising property to *Huie* as trustee. *See* TEX.PROP.CODE § 112.001(3). It is Huie that holds the trust property for the benefit of Chenault, and it is Huie that is authorized to hire counsel. *See* TEX.PROP. CODE § 113.018. The term "trust" refers not to a separate legal entity but rather to the *fiduciary relationship* governing the trustee with respect to the trust property. *See* TEX. PROP.CODE § 111.004. Ringer thus represented Huie in his capacity as trustee, not the "trust" as an entity.

## IV

■ Chenault also argues that communications between Ringer and Huie should be disclosed under the crime-fraud exception to the attorney-client privilege. *See* TEX.R.CIV. EVID. 503(d)(1). Chenault does not argue that the alleged breaches of trust for which she is suing are crimes or fraud within this exception; rather, she contends that the failure to disclose communications in and of itself is fraud. Because we have held that the trustee's invocation of the attorney-client privilege does not violate his or her duty of full disclosure, we find Chenault's crime-fraud argument to be without merit.

## V

### A

■ The party resisting discovery bears the burden of proving any applicable privilege. *See State v. Lowry*, 802 S.W.2d 669, 671 (Tex.1991). Chenault argues that even if the attorney-client privilege is otherwise available, Huie failed to carry his evidentiary burden to establish its applicability in this case.

Ringer, who was allowed to give testimony in narrative form, testified in part as follows:

The questions that were propounded to me during my deposition by [Chenault's counsel] I believe were argumentative, and they sought to go at the very core of things I understood, things that I knew, or even questions that related to whether something occurred or not, would go to the essence of the advice and communication. I have always handled my work with Mr. Huie with the fullest expectation that my correspondence with him and my communications with him and his correspondence with me and his communication with me would be privileged.... I also have Mr. Huie's instruction and expectation that his communications be confidential....

Ringer did not specifically address any of the numerous certified questions before the court, and thus there is no testimony about whether or why each particular question calls for the disclosure of confidential communications. Chenault thus contends that Huie did not prove "what particular deposition testimony would entrench upon the alleged attorney-client privilege...." Huie responds that many of the questions on their face call for privileged communications, but at the same time concedes that other questions "arguably present a close question as to whether confidential attorney-client communications ... would be compromised."

The trial court's ruling is based on its conclusion that the attorney-client privilege does not apply to any pre-litigation communications between a trustee and the trustee's attorney, a contention we have rejected. In light of this holding, we believe the trial court should have an opportunity to consider, in the first instance, whether Huie has carried his evidentiary burden as to each of the certified questions for which Ringer claimed, on Huie's behalf, the attorney-client privilege. The court may, in its discretion, receive further evidence from the parties.

### B

Chenault further argues that many of the certified questions relate to federal tax re-

turns filed by the estate. Relying on cases interpreting the federal attorney-client privilege, she contends that the privilege does not apply when an attorney is employed to prepare tax returns, as the attorney is primarily performing accounting, rather than legal, services. *See, e.g., In re Grand Jury Investigation,* 842 F.2d 1223, 1225 (11th Cir.1987); *United States v. Davis,* 636 F.2d 1028, 1043 (5th Cir.1981); *Canaday v. United States,* 354 F.2d 849, 857 (8th Cir.1966). *But see Colton v. United States,* 306 F.2d 633, 637 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

The attorney-client privilege embodied in Rule 503 requires that the communication be "made for the purpose of facilitating the rendition of professional legal services to the client...." The trial court, in considering whether Huie has met his evidentiary burden, should in the first instance determine whether this element is satisfied as to each of the certified questions.

## VI

The trial court also overruled Huie's attorney-work-product objections as to communications made before the date Chenault filed suit. Huie contends that the work-product privilege protects communications made after 1988, the time when he contends that he anticipated litigation.

An attorney's "work product" refers to "specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories, prepared and assembled in actual anticipation of litigation or for trial." *National Tank Co. v. Brotherton,* 851 S.W.2d 193, 200 (Tex.1993). The trial court did not rule on Huie's claims of work-product privilege independently of his claims of attorney-client privilege; rather, the court summarily overruled both of these claims as to all pre-litigation communications. It thus appears that the trial court concluded, as it did for the attorney-client privilege, that the work-product privilege simply does not apply in the fiduciary-attorney relationship prior to the time suit is actually filed.

We disagree with this conclusion. The policy reasons supporting the attorney-client privilege in the context of the fiduciary-attorney relationship support even more strongly the work-product privilege, as the latter protects the confidentiality of work prepared in anticipation of litigation. There can be little dispute that a fiduciary must be allowed some measure of confidentiality in defending against an anticipated suit for breach of fiduciary duty. Further, we do not believe it is determinative that Ringer was compensated from trust funds, rather than by Huie personally, before Chenault filed suit. The determinative factor for the work-product privilege is instead whether litigation was anticipated. While we express no opinion on whether it was *proper* for Ringer to be compensated from trust funds for any work that may have been done in anticipation of litigation, we hold that any such impropriety would not abrogate the work-product privilege. *See Lasky, Haas, Cohler & Munter v. Superior Court,* 172 Cal.App.3d 264, 218 Cal. Rptr. 205 (1985) (public policy underlying full disclosure by trustee does not overcome work-product privilege, even where attorney is compensated from trust corpus).

Because the trial court concluded that the work-product privilege did not apply to materials or communications generated prior to the time suit was filed and Huie began personally compensating Ringer, it appears that the court never reached the issue of when Huie anticipated litigation. The court should therefore reconsider Huie's work-product objections in accordance with this opinion.

## VII

Chenault argues that because the legal question confronting the trial court was an issue of first impression in Texas, the court could not have "abused its discretion" in resolving the issue, and thus mandamus relief is inappropriate. We disagree. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Consequently, the trial court's erroneous legal conclusion, even in an

unsettled area of law, is an abuse of discretion. *See Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988). Moreover, because the trial court's order compels the disclosure of potentially privileged information, Huie lacks an adequate remedy by appeal. *See Walker,* 827 S.W.2d at 843.

We therefore conditionally grant the writ of mandamus and direct the trial court to vacate its July 19, 1995, discovery order. The trial court shall reconsider Huie's claims of attorney-client and attorney-work-product privilege in accordance with this opinion. The court may in its discretion receive additional evidence from the parties.