**In re TOYOTA MOTOR CORPORA-
TION and Toyota Motor Sales,
U.S.A., Inc., Relators.**

No. 04–02–00588–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 11, 2002.

Rehearing Overruled Jan. 16, 2003.

Brian K. Gary, Kurt C. Kern, Hartline, Dacus, Dreyer & Kern, L.L.P., Scott Patrick Stolley, Thompson & Knight, L.L.P., Dallas, for appellant.

Francisco Guerra, IV, Alex M. Miller, Watts Law Firm, L.L.P., Kelly O'Connor, Law Offices of Kelly O'Connor, San Antonio, Anthony L. Vitullo, Zach T. Mayer, Fee, Smith, Sharp & Vitullo, Dallas, Michael D. Weisman, Weisman & Associates, P.C., Boston, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, SARAH. B. DUNCAN, Justice.

Opinion by PAUL W. GREEN, Justice.

In this original proceeding, relators Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (Toyota) seek to overturn the trial court's order compelling Toyota to produce documents Toyota claims are privileged. We deny the writ in part and conditionally grant the writ in part.

## BACKGROUND

Frank Naranjo, Teresa Naranjo, and Charles Buffington, Jr. (plaintiffs) sued Toyota for damages arising from the deaths of two passengers in a rollover accident involving a Toyota 4Runner.

Toyota 4Runners produced in 1996, 1997, and early 1998 had been recalled due to instability; however, the vehicle in which the passengers were riding was not included in the recall.

After producing over 100,000 pages of documents, drawings, and videotapes in response to plaintiffs' discovery requests, Toyota withheld 86 documents, asserting attorney-client and work product privileges, and produced a privilege log identifying the withheld documents. Plaintiffs filed a motion to compel the 86 documents, asserting the privilege log was insufficient and not all of the documents were privileged. At the hearing, however, plaintiffs sought to compel only 6 of the 86 documents.

At the hearing, Toyota introduced the affidavit of its in-house counsel, Alexander L. Conti. With regard to the 6 documents plaintiffs sought to compel, Conti's affidavit described the documents as follows:

PTM–0046—Communications to Toyota counsel for the purpose of requesting legal advice or of facilitating the rendition of professional legal service.

PTM–0077—Communications made or received by in-house attorneys and by outside counsel generally addressing scheduling or technical matters.

PTM–0081—Attorneys' memoranda or handwritten notes, either original notes or notes on a document under review by the attorney regarding matters on which the attorneys had been requested to provide legal advice.

PTM–0083, PTM–0084, PTM–0085—Drafts of documents sent to attorneys for review and analysis. "[T]he col-

lection of drafts contain, through the progression of changes in the drafts, input from Toyota's attorneys, including me. My handwritten notes are on several of the drafts." The final draft was produced during discovery.

Conti's affidavit states "each of the documents contains a communication or work product that was intended to be confidential, that was kept confidential within the offices of [Toyota], Toyota's outside counsel, and consultants to Toyota's attorneys, and that was made or created for the purpose (a) of requesting legal advice and legal services, (b) of providing legal advice and legal services, or (c) of facilitating the rendition of professional services." Conti also verifies that the descriptions provided for each of the documents on the privilege log are truthful and accurate.

The trial court requested copies of the documents in order to conduct an *in camera* inspection. At the conclusion of its inspection, the trial court separated the documents into "privileged" and "nonprivileged" stacks and ordered the production of the "nonprivileged" documents. Toyota objects to the production order.

## STANDARD OF REVIEW

Mandamus relief is available when a trial court abuses its discretion by erroneously ordering the disclosure of privileged information. *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992). A trial court abuses its discretion with regard to factual matters if the trial court could reasonably have reached only one decision. *Id.* at 840. With respect to legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *Id.* In this case, we are concerned with the trial court's application of the attorney-client privilege and the work product privilege.

The scope of the attorney-client privilege is defined by Rule of Evidence 503. Tex.R. Evid. 503. Under Rule 503, a client may refuse to disclose confidential communications between the client and the attorney made for the purpose of facilitating the rendition of professional legal services to the client. *Id.* The privilege is intended to allow unrestrained communication and contact between attorney and client in all matters in which the attorney's professional advice or services are sought, without fear that these confidential communications will be disclosed by the attorney, voluntarily or involuntarily, in any legal proceeding. *Huie v. DeShazo,* 922 S.W.2d 920, 922 (Tex.1996). The privilege thus promotes effective legal services, which in turn promotes the broader societal interest of the effective administration of justice. *Id.* While the attorney-client privilege extends to an entire communication, including facts contained therein, a person cannot cloak a material fact with the privilege merely by communicating it to an attorney. *Id.* However, this does not mean that the factual matters must be produced by producing the privileged communication containing the facts. As one court has explained:

> We agree that the relevant facts of a case may not be hidden under the guise of privilege. However, those facts are discoverable through other proper means of discovery, without forcing the production of a privileged document which may also contain that factual information. ... Once it is established that a document contains a confidential communication, the privilege extends to the entire document, and not merely the specific portions relating to legal advice, opinions, or mental analysis. It is inconceivable that an attorney could give sound legal advice on a client's case if he or she did not include an application of the law or opinion to the specific facts of

that case. If we were to hold that all or part of a document containing privileged information should be disclosed because it also included facts pertinent to the lawsuit, the purpose of the attorney-client and work-product privileges would be annihilated. The ultimate effect of such a holding would be that clients would be reluctant to give their attorneys any factual information for fear that it would be subject to discovery. And no attorney could even begin to prepare a case for trial, or be able to give sound advice for lack of those facts. Such a chilling intervention into the attorney-client relationship under the guise of "looking for facts," pierces the core of a critical privilege to carve out limited and usually superfluous morsels of discovery otherwise obtainable. In our opinion, the cost is too great.

*Pittsburgh Corning Corp. v. Caldwell,* 861 S.W.2d 423, 425 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding). Thus, we must look to the nature of the communication to determine whether the attorney-client privilege applies.

■ The scope of the work product privilege is defined by Rule 192.5 of the Rules of Civil Procedure. TEX.R. CIV. P. 192.5. Rule 192.5 defines work product as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

TEX.R. CIV. P. 192.5(a). "To determine when a party reasonably anticipates or foresees litigation, the trial court must look to the totality of the circumstances and decide whether a reasonable person in the party's position would have anticipated litigation and whether the party actually did anticipate litigation." *In re Monsanto Co.,* 998 S.W.2d 917, 924 (Tex.App.-Waco 1999, orig. proceeding).

Rule 192.5 encompasses two types of work product. Core work product is defined as "the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories." TEX.R. CIV. P. 192.5(b)(1). Core work product is not discoverable. *Id.* Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means. TEX.R. CIV. P. 192.5(b)(2).[2]

## DISCUSSION

### 1. PTM–0046

■ PTM–0046 contains the results of several steer tests on different model cars. The privilege log identifies the document as three copies of data selected and organized by Toyota legal personnel. The first copy contains handwritten notes of Toyota's in-house counsel, noting the particular tests counsel identified for further review. The third copy is preceded by a fax cover

---

**2.** Plaintiffs in this case did not make a showing of substantial need or undue hardship; therefore, any document at issue subject to the work product privilege is not discoverable.

sheet from Toyota's in-house counsel, indicating the test result was sent to outside counsel. Conti's uncontroverted affidavit states the test results were sent to counsel for the purpose of requesting or facilitating legal advice.

In view of the uncontroverted affidavit, we conclude PTM–0046 consists of communications from Toyota to its attorneys for the purpose of facilitating legal services. Although the communications contain material relevant facts, the plaintiffs must find another discovery approach to obtain those test results. *See Caldwell,* 861 S.W.2d at 425. Otherwise, Toyota would be reluctant to give its attorneys any factual information for fear that the entire communication would be subject to discovery. *Id.*

The trial court only excluded the fax cover sheet. We hold the trial court abused its discretion in ordering the production of PTM–0046.

### 2. PTM–0077

PTM–0077 is a series of documents relating to the acquisition of four 4Runner vehicles and the shipment of those vehicles to Japan. One of the correspondents is Susan/Suzanne McCann, Toyota's attorney. Conti's affidavit does not conclusively establish that the other two correspondents, Nippon Express (Andy Palencia) and Car & Truck Locator (Art Butler), must be considered Toyota's representatives for purposes of the work product privilege. Therefore, in deference to the trial court's determination of factual matters, we hold the trial court could reasonably have determined that Palencia and Butler were not Toyota's representatives.

We have organized, identified, and considered each document series as follows:

(a) (PTM–0077–1—PTM–0077–3) Three page fax from Palencia to McCann—not a communication between Toyota and its attorney and not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(b) (PTM–0077–4—PTM–0077–10) Fax from McCann to Palencia—not a communication between Toyota and its attorney and not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(c) (PTM–0077–11—PTM–0077–13) Fax from Conti to McCann—communication between Toyota's attorneys. This document is privileged.

(d) (PTM–0077–14—PTM–0077–15) Fax from Palencia to McCann—not a communication between Toyota and its attorney and not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(e) (PTM–0077–16—PTM–0077–17) Internal check request by McCann—internal communication among Toyota's representatives. This document is privileged.

(f) (PTM–0077–18) Fax quote sheet from Palencia to McCann—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(g) (PTM–0077–19—PTM–0077–20) Fax from McCann to Butler—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(h) (PTM–0077–21) Letter from McCann to Butler—not a communication between Toyota and its

representative or among its representatives. This document is discoverable.

(i) (PTM–0077–22) Letter from Conti to Nippon Express—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(j) (PTM–0077–23) Certificate of Title. This appears to be the enclosure for PTM–0077–21. This document is discoverable.

(k) (PTM–0077–24—PTM–0077–26). Fax from McCann to Palencia—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(l) (PTM–0077–27) Quote Sheet from Nippon Express to McCann—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(m) (PTM–0077–28) Fax from McCann to Butler and Palencia—not a communication between Toyota and its representative or among its representatives. This document is discoverable.

(n) (PTM–0077–29) Letter from Toyota to McCann—communication between Toyota and its attorney. This document is privileged.

(o) (PTM–0077–30)—E–mail from Conti to Toyota legal assistant and McCann—communication among Toyota's representatives. This document is privileged.

In summary, the following documents in this group are privileged: (1) PTM–0077–11 through PTM–0077–13; (2) PTM–0077–16 and PTM–0077–17; (3) PTM–0077–29; and (4) PTM–0077–30. The trial court properly protected PTM–0077–11 through PTM–0077–13. The trial court abused its discretion in ordering the production of PTM–0077–16, PTM–0077–17, PTM–0077–29, and PTM–0077–30.

### 3. PTM–0081

▓ Conti's affidavit includes PTM–0081 in a list described as memoranda or notes prepared by Toyota's attorneys regarding matters on which the attorney had been requested to provide legal advice. The privilege log states that PTM–0081 consists of materials prepared and organized in a binder by and at the request of Toyota's attorneys regarding matters that were at issue in pending and anticipated litigation. The log further provides that the binder contains legal and technical materials selected by Toyota's attorney in order to analyze the legal implications of testing conducted in mid-September 2000.

A review of the document reveals that it is a notebook consisting of information collected by attorney McCann about the types of vehicles involved in pending litigation or in investigations in anticipation of litigation. She includes communications regarding the purchase of similar vehicles and equipment for testing, arranging for consultants and test sites, and coordinating and analyzing the test results. In short, it appears McCann was responsible for coordinating the testing of various vehicles that were or were anticipated to be the subject of litigation.

The trial court split the binder apart and ordered the production of specific pages. However, PTM–0081 is clearly a litigation binder prepared by or at the direction of an attorney, and despite the fact that certain documents contained therein may be subject to discovery in response to appropriate requests, the binder as a whole should be protected as work product. As one court has stated:

The threshold issue can be dispensed with quickly. The binder contains a small percentage of the extensive documents reviewed by plaintiff's counsel. In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research. There can be no doubt that ... the binders were entitled to protection as work product.

*James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982); *see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y.1977) (holding notebooks containing "counsel's ordering of the 'facts,' referring to the prospective proofs, organizing, aligning, and marshaling empirical data" constitute work product).

The plaintiffs speculate that Toyota is trying to hide pre-existing documents by including them in the attorney's litigation binder. But there is nothing to indicate that Toyota has not already produced the relevant factual information in response to other discovery requests. How Toyota's attorneys decided what vehicles to test, who to employ, and how it should be done is protected work product. The trial court abused its discretion in ordering production of the binder.[3]

### 4. PTM–0083, PTM–0084, PTM–0085

 Conti's uncontroverted affidavit states that PTM–0083, PTM–0084, and PTM–0085 are drafts reports sent to Toyota's attorneys by Toyota's representatives for review and comment. PTM–0085 contains handwritten notes by Toyota's attorneys. The final version of the report has been produced to Plaintiffs. These draft reports are factual information contained in privileged communications and are privileged from discovery. *See Caldwell,* 861 S.W.2d at 425; *see also In re Monsanto,* 998 S.W.2d at 931 (finding drafts of patent applications and letters to EPA sent to attorneys for review and comment privileged).

The plaintiffs complain that Toyota should have agreed to produce redacted copies of the drafts. However, Toyota is correct that a review of the drafts themselves would reveal the advice and editing provided by the attorneys. The factual information in the drafts is consistent and has been produced in the final report. The trial court abused its discretion in ordering the production of PTM–0083, PTM–0084, and PTM–0085.

### CONCLUSION

The trial court abused its discretion by ordering production of PTM–0046, PTM–0077–16, PTM–0077–17, PTM–0077–29, PTM–0077–30, PTM–0081, PTM–0083, PTM–0084, and PTM–0085. We conditionally grant the writ of mandamus with respect to the listed documents and expect that the trial court will modify its order within twenty days of our opinion. If the trial court fails to comply, we will issue the writ. All other relief requested by relators is denied.

Concurring and Dissenting opinion by:
PHIL HARDBERGER, Chief Justice.

---

**3.** The plaintiffs also suggest that because Toyota voluntarily revealed that its attorneys had relevant information, it should be required to produce that information. Toyota's disclosure of the existence of the litigation binder was not voluntary; Toyota is required by the Rules of Civil Procedure to reveal what documents it is withholding under claim of privilege. Plaintiffs' argument is without merit.

Concurring and Dissenting opinion by: PHIL HARDBERGER, Chief Justice.

I agree with the majority that some documents for which production was ordered are privileged. The privileged documents include attorney communications (both written and e-mail), internal check requests, and draft reports containing recommended changes by attorneys. I disagree though that the test results are privileged (PTM–0046 and portions of PTM–0081).

As the majority states, over 100,000 pages of documents, drawings, and videotapes were produced by Toyota in discovery; however, neither the trial judge nor the judges on this court can determine if the test results Toyota seeks to protect are included in the documents that have been produced. The plaintiffs' requests for production include a request for all testing information.

Test results are not an attorney communication or attorney work product, and Toyota cannot cloak the test results with a privilege by attaching the results to an attorney communication or enclosing it in a binder. *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex.1996). As the United States Supreme Court has stated:

> A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). "Opposing counsel is entitled to obtain through discovery the names of witnesses, facts underlying the cause of action, technical data, the results of studies, investigations and testing to be used at trial, and other factual information." *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D.Penn.1997). "The inclusion of such information in documents prepared by, or circulated to, counsel does not render them inviolate on grounds of privilege." *Id.*

The attorney communications to which the test results are attached may retain their privilege, but the material facts—the test results—are not privileged. I would hold that the trial court did not abuse its discretion in allowing the test results to be discovered, and I respectfully dissent to the portion of the majority's opinion that holds to the contrary.