In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00225-CR
______________________________


BRIAN DOUGLAS HEDDEN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 265th Judicial District Court
Dallas County, Texas
Trial Court No. F02-25184-WR


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Brian Douglas Hedden has appealed the trial court's judgment adjudicating his guilt
and sentencing him to twelve years' imprisonment. On appeal, Hedden contends (1) the
trial court failed to afford him due process because he was not served with a copy of the
motion to adjudicate guilt, (2) the trial court erred by adjudicating Hedden's guilt for reasons
other than a violation of the original judgment placing him on deferred community
supervision, and (3) the evidence is insufficient to support a finding Hedden violated the
conditions of his community supervision in the manner alleged in the State's motion to
adjudicate guilt. We dismiss the appeal for want of jurisdiction.
Background
          On November 5, 2002, Hedden pled guilty to the offense of sexual assault of a child,
as charged in the indictment. See Tex. Pen. Code Ann. § 22.011(a)(2)(A) (Vernon Supp.
2004) (sexual assault of a child). Pursuant to a plea agreement, the trial court deferred
a finding of guilt and placed Hedden on community supervision for a period of ten years. 
          On December 4, 2002, the trial court modified Hedden's conditions of community
supervision. See Tex. Code Crim. Proc. Ann. art. 42.12, § 10 (Vernon Supp. 2004) (trial
court may modify conditions of community supervision). The modification prohibited
Hedden from operating a motor vehicle without first obtaining a valid Texas driver's license,
and it ordered that, before he obtained a driver's license, Hedden was first to
enter the Dallas County Community Supervision and Corrections
Department['s] Antabuse Program to include consuming an Antabuse tablet
as prescribed by a doctor, and supply proof to the probation officer that an
Antabuse tablet was consumed in the presence of a staff member daily. 
Comply with the directives and policies of the Antabuse Program.
 
Hedden's signature, acknowledging and accepting the terms of the trial court's
modification, appears at the bottom of the trial court's order. 
          On June 4, 2003, the State filed a motion to adjudicate Hedden's guilt, alleging
Hedden had failed to take the Antabuse on March 6, 11, 21, 24, and 31, on April 10 and
22, and on May 14 of that year. On July 19, 2003, Hedden filed an objection to the State's
motion to adjudicate guilt on the basis that the alleged violations were not required by the
trial court's order of November 5, 2003. 
          The following day, Hedden pled "true" to the allegations contained in the State's
motion to adjudicate guilt, including failing to take Antabuse as required. The trial court
adjudicated his guilt and sentenced him to twelve years' imprisonment. 
Analysis
          In his first point of error, Hedden contends he was denied due process because the
State failed to serve him with written notice of the way in which Hedden allegedly violated
his conditions of community supervision. Hedden next asserts the trial court erred by
adjudicating his guilt for violating the terms of the modification order of December 4, 2004,
because those conditions were "vague and ambiguous." Finally, Hedden argues the trial
court abused its discretion by adjudicating his guilt when the evidence presented at the
hearing varied from the allegation contained in the State's motion to adjudicate guilt. 
          "It is well settled that no appeal may be taken of a trial court's determination to
adjudicate guilt." Smith v. State, 52 S.W.3d 475, 476 (Tex. App.—Corpus Christi 2001,
pet. ref'd) (citing Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b); Phynes v. State, 828
S.W.2d 1, 2 (Tex. Crim. App. 1992)). Hedden's points of error concern the trial court's
decision to proceed to an adjudication of guilt. We are without jurisdiction to consider
issues related to a trial court's decision to proceed to an adjudication of guilt. Cf. Phynes,
828 S.W.2d at 2 (appellate court was without jurisdiction to consider whether trial court
erred by proceeding on motion to adjudicate when counsel was not present). But cf.
Vidaurri v. State, 49 S.W.3d 880, 885 (Tex. Crim. App. 2001) (appellate court had
jurisdiction to consider claim that appellant was denied separate punishment hearing
because that issue was separate from court's decision to adjudicate).



          Moreover, even if we had jurisdiction to consider the first point of error, Hedden
failed to preserve the issue for appellate review. To preserve an issue for appellate review,
the record must show (1) the complaint was presented to the trial court by timely request,
objection, or motion, and (2) the trial court either ruled on the request, objection, or motion,
or the trial court refused to rule and the appellant objected to that refusal to rule. Tex. R.
App. P. 33.1(a). Even certain constitutional errors may be waived. Wright v. State, 28
S.W.3d 526, 536 (Tex. Crim. App. 2000). Hedden did not object before, or during, the
hearing on the State's motion. Neither did Hedden request a continuance for more time
to prepare. The record also shows Hedden was aware of the allegations contained in the
State's motion to adjudicate. Cf. Eddie v. State, 100 S.W.3d 437, 440 (Tex.
App.—Texarkana 2003, pet. ref'd). Therefore, if we had jurisdiction, we would find Hedden
failed to preserve this issue for appellate review.
          For the reasons stated, we are without jurisdiction to consider Hedden's appeal. We
dismiss the appeal for want of jurisdiction.


                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      March 29, 2004
Date Decided:         March 30, 2004

Do Not Publish



ft: 0.5in"> 
(1)       The Hospital Waived Its Objections to the Subpoena
            Crane, the real party in interest, argues the Hospital waived any objections by failing to
timely object to the subpoena. Any objections to a subpoena must be made "before the time
specified for compliance" with the subpoena. Tex. R. Civ. P. 176.6(d), (e); see Young v. Ray, 916
S.W.2d 1, 3 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (former rule 177a). The
Hospital  acknowledged  in  its  objections  filed  with  the  trial  court  that  it  received  the
subpoena July 25, 2005. Compliance with the subpoena was due twenty days after it was served. 
The Hospital filed its objections November 1, 2005. Because the objections were filed after
subpoena compliance was due, and because the Hospital failed to explain or justify its three-month
delay in objecting to the subpoena, the Hospital waived its objections to the subpoena.
(2)       Even Without Waiver, the Trial Court's Order Was Not an Abuse of Discretion
            Even without the Hospital's waiver of its subpoena objections, the requested writ of
mandamus would not be available because the Hospital has failed to show that the trial court clearly
abused its discretion. There was no abuse of discretion because the trial court's production order
neither exceeds the scope of the discovery rules nor clearly places a burden on the Hospital
outweighing the benefit to be obtained from the production.
 
 
 
            (a)       The Production Order Did Not Exceed the Scope of the Discovery Rules
            The Hospital argues, in its first issue, that neither Rule 176.6(d) nor Rule 205 of the Texas
Rules of Civil Procedure permit custodial transfer of tangible items.


 The trial court obviously
concluded otherwise.
            We review de novo the trial court's conclusions concerning the scope of the Texas Rules of
Civil Procedure. BASF Fina Petrochemicals L.P. v. H.B. Zachry Co., 168 S.W.3d 867, 871 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied). "A trial court has no 'discretion' in determining what
the law is or applying the law to the facts." Huie v. DeShazo, 922 S.W.2d 920, 927–28 (Tex. 1996)
(orig. proceeding) (quoting Walker, 827 S.W.2d at 840). Therefore, an erroneous legal conclusion
by the trial court constitutes an abuse of discretion. Huie, 922 S.W.2d at 927–28. A trial court
clearly abuses its discretion when it orders the production of discovery beyond that permitted by the
Texas Rules of Civil Procedure.



            Discovery from nonparties is governed by Rule 205. See Tex. R. Civ. P. 205.1. Rule 205.1
allows oral depositions, depositions on written questions, and requests for production of documents
or tangible things. See Tex. R. Civ. P. 205.1. Rule 205.3 provides for production of documents and
tangible things from a nonparty. See Tex. R. Civ. P. 205.3. Any objections to discovery under Rule
205.3 must be in accordance with Rule 176.6. Id.; see Tex. R. Civ. P. 176.6.
            The Hospital argues that the production contemplated by Rule 176.6(d) is limited to
"inspection or copying of designated documents and things." That reading is too limited. Rule
176.6(d) refers to an order "to produce and permit inspection or copying of designated documents
and things." Tex. R. Civ. P. 176.6(d). The quoted language from the rule does not define
"production." Further, the Hospital's narrow interpretation would subvert explicit portions of Rule
205.3.
            The plain language of Rule 205.3(b)(3) includes "testing" as one legitimate purpose of
production of an item from a nonparty. See Tex. R. Civ. P. 205.3(b)(3). Specifically, the rule
provides that a notice to produce tangible things must state "the items to be produced or inspected
by individual item or by category, describing each item and category with reasonable particularity,
and, if applicable, describing the desired testing and sampling with sufficient specificity to inform
the nonparty of the means, manner, and procedure for testing or sampling." Id. By requiring notice
of proposed testing and the manner and means of the proposed testing, the rules clearly indicate
production is available to test tangible objects beyond simple inspection.
            Generally, we should interpret rules according to the plain meaning of the words in the rule. 
See City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). When two rules govern
the same subject matter, an effort should be made to harmonize and give effect to both rules. See
Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 531 (Tex. 2002). The Hospital's proposed interpretation
would be contrary to the plain language of the rules and render certain portions of Rule 205.3
meaningless. Certainly, a party has the right to do its own testing. See Tex. R. Civ. P. 205.3(b)(3);
In re SWEPI L.P., 103 S.W.3d 578, 585 (Tex. App.—San Antonio 2003, orig. proceeding) (testing
of hydrocarbon well).
            The question really is whether that testing may be done only while the item remains in the
possession of the owner or original custodian. The rule is not so limited. Much testing would either
be impossible or extremely limited if the tangible object could be tested only in the custody of the
owner or original custodian. The rules expressly provide for production of a tangible item for
testing, and one contemplated method by which that production may be accomplished is physically
delivering possession of the item to the requesting party or that party's agent. See Gen. Motors Corp.
v. Tanner, 892 S.W.2d 862, 863 (Tex. 1995) (orig. proceeding) (per curiam) (granting mandamus
to compel party to deliver car seat, apparently into another party's custody, for testing by allowing
requesting party to make model of item for subsequent examination using scanning electron
microscope); Gen. Elec. Co. v. Salinas, 861 S.W.2d 20, 23–24 (Tex. App.—Corpus Christi 1993,
no writ) (error to deny motion to deliver possession of allegedly defective product for testing); see
also Axelson, Inc. v. McIlhany, 798 S.W.2d 550, 556 (Tex. 1990) ("produce" to court means deliver
to court's possession). Because the production rules are broad enough to include transfer of
possession of a tangible item for the purpose of testing it, the trial court's order does not exceed the
scope of the Texas Rules of Civil Procedure.
            (b)       The Trial Court Balanced the Benefits and Burdens Within Its Discretion
            In its second issue, the Hospital argues the trial court imposed an undue burden on the
Hospital by ordering the production of the pathology materials. We find no abuse of discretion in
the trial court's allocation of burdens and benefits.
            The scope of discovery is broadextending to "any matter that is not privileged and is
relevant to the subject matter of the pending action . . . ." Tex. R. Civ. P. 192.3(a). Further, "only
in certain narrow circumstances is it appropriate to obstruct the search for truth by denying
discovery." State v. Lowry, 802 S.W.2d 669, 671 (Tex. 1991) (orig. proceeding); Collins v. Cleme
Manor Apartments, 37 S.W.3d 527, 532–33 (Tex. App.—Texarkana 2001, no pet.).
            With respect to the resolution of factual issues or matters committed to the trial court's
discretion, the reviewing court may not substitute its judgment for the trial court. Brady v.
Fourteenth Court of Appeals, 795 S.W.2d 712, 714 (Tex. 1990) (orig. proceeding); Walker, 827
S.W.2d at 839–40. The relator must establish that the trial court could reasonably have reached only
one decision. Walker, 827 S.W.2d at 840. "An abuse of discretion does not exist if the trial court
bases its decision on conflicting evidence and some evidence reasonably supports the trial court's
decision." CSR Ltd. v. Link, 925 S.W.2d 591, 600 (Tex. 1996) (orig. proceeding).
            A trial court abuses its discretion if it compels discovery which imposes a burden on the
producing party far out of proportion to any benefit to the requesting party. In re AIU Ins. Co., 148
S.W.3d 109, 116–17 (Tex. 2004) (orig. proceeding); Walker, 827 S.W.2d at 843. Rule 192.4 of the
Texas Rules of Civil Procedure provides as follows:
The discovery methods permitted by these rules should be limited by the court if it
determines, on motion or on its own initiative and on reasonable notice, that:
 
(a) the discovery sought is unreasonably cumulative or duplicative, or is
obtainable from some other source that is more convenient, less burdensome, or less
expensive; or
(b) the burden or expense of the proposed discovery outweighs its likely
benefit, taking into account the needs of the case, the amount in controversy, the
parties' resources, the importance of the issues at stake in the litigation, and the
importance of the proposed discovery in resolving the issues.

Tex. R. Civ. P. 192.4. The rules encourage "trial courts to limit discovery when 'the burden or
expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the
case, the amount in controversy, the parties' resources, the importance of the issues at stake in the
litigation, and the importance of the proposed discovery in resolving the issues.'" In re Alford
Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999) (orig. proceeding).
            The Hospital argues it has a responsibility, as a research hospital, to preserve and protect
pathology materials collected from patients. According to the Hospital, these materials must be
readily accessible for researchers, stored in a manner which ensures the integrity of the material, and
handled properly. Removal of tissue from the Hospital for testing risks complete loss of the tissue
or loss or damage of the tissue through improper handling, such as breaking of glass slides or melting
of paraffin blocks, thus jeopardizing the material's value for research.
            Seeking to preserve the pathology materials in its possession, the Hospital has adopted a
policy for responding to and accommodating requests for testing of pathology materials by allowing
only on-site examination of slides or, on request, by Hospital laboratory personnel cutting additional
sections from specimen blocks and making those new sections available to the requesting party. The
Hospital alleges other litigants have successfully used this procedure and believes this policy
balances the needs of its research with the needs of litigants. 
            The Hospital does not claim or demonstrate that Andrews' tissue samples have unique value
to its research, but claims only that they are part of its sample collection. Further, the Hospital has
had the tissue available for study, we presume, since 2001, the year of Andrews' death. On the other
hand, the materials have specific, unique value to the parties to the lawsuit. In fact, they are of vital
importance to the parties' underlying litigation. Without access to the pathology materials, the real
party in interest would have difficulty performing the tests necessary to prepare its defense. Both
sides in the personal injury litigation have an apparent special need to access the materials, since the
Andrews materials may very well be the most important evidence available to them.
            The trial court was presented with evidence that the Hospital's procedure may not meet the
needs  of  the  litigants.


  During  the  hearing,  both  Russell  Brown,  counsel  for  the  plaintiff, and
Scott C. Skelton, counsel for Crane, testified that many of the experts for both the defense and the
plaintiff's side are "from all over this nation" and that inspection at the Hospital would not be cost-effective. Further, at least some of the tests the parties desire to perform on the materials could not
be performed under the Hospital's policy. The attorneys also testified that the samples are shipped
by reliable shippers and care is taken to follow any protocol requested by the Hospital concerning
proper handling of the material.
            The trial court has acted to protect the pathology materials. The trial court's order should be
read in conjunction with the agreed discovery order of February 2, 2004. The agreed discovery
order—agreed between the parties to the litigation, not the Hospital—provides a protocol for testing
of all pathology materials in the case and provides protections to the parties as well as the Hospital
for preservation of the same. The agreed order provides:
In the event it appears that insufficient pathology material is available, the Court will
conduct further hearings to determine how testing shall proceed. If destructive
testing shall destroy all, or effectively all, of the pathology material, no testing shall
take place without further order of this court.

The agreed order provides a mechanism for the Hospital to protect its interest in the sample. The
Hospital has neither requested modification of the agreed order, nor shown that the proposed
analyses are inappropriate.
            The pathology materials are critically important to the parties, and the Hospital failed to show
that the trial court clearly abused its discretion. We recognize that multiple parties have interests in
the pathology material in dispute. Although the Hospital clearly has an interest in preserving its
samples' integrity for research and maximizing the access researchers have to its samples, the parties
have a vital interest in being able to properly and completely analyze the Andrews samples to
adequately prepare for the pending litigation. There is sufficient evidence to support the trial court's
decision. We cannot say the trial court clearly abused its discretion in balancing these interests and
in resolving the conflicting evidence. The trial court did not abuse its discretion in concluding the
burden on the Hospital did not outweigh the benefit to the parties.
            For the reasons stated, we deny the Hospital's petition for writ of mandamus.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 18, 2006
Date Decided:             July 19, 2006