In re the GUARDIANSHIP OF John R. "Jack" ARCHER, an Incapacitated Person.

No. 04–02–00547–CV.

Court of Appeals of Texas, San Antonio.

May 3, 2006.

Rehearing Overruled June 26, 2006.

Frank N. Ikard, Jr., Mary E. Haught, Ikard & Golden, P.C., Laurie Ratliff, Ikard Whynne and Ratliff, LLP, Austin, for appellant.

Edward C. Mainz, Jr., Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., Ricardo G. Cedillo, Henry B. Gonzalez, III, Davis, Cedillo & Mendoza, Inc., George H. Spencer, Jr., Jeff Jowers, Clemens & Spencer, P.C., Sandra C. Zamora, Gerald

D. McFarlen, San Antonio, Sam Johnson, Jane M.N. Webre, Scott, Douglass & McConnico, L.L.P., Austin, Linda C. Breck, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Sherri Archer Loveday brought a derivative legal malpractice action in the probate court against appellees on behalf of her uncle's temporary guardian, alleging that the temporary guardian had failed or refused to prosecute the lawsuit. Loveday appeals the trial court's dismissal of her claims against appellees. Appellees respond that the trial court correctly dismissed Loveday's claims because she did not have standing or capacity to bring suit on behalf of her uncle's temporary guardian. We affirm the judgment of the trial court.

## BACKGROUND

Loveday's uncle, John R. "Jack" Archer, is an incapacitated individual. This case arises from Loveday's belief that her uncle's attorneys had been careless with his money and her concern that her uncle's temporary guardian had not brought suit against the attorneys.

Several years ago, Archer suffered a stroke that affected his mental abilities. Thereafter, Archer made changes to his estate plan, including the creation of a trust containing most of his assets, with the help of his girlfriend, Pamela Rucker, and several attorneys, including Douglass Hearne, Richard Leshin of the Kleberg Law Firm, J.G. Adami, Jr. of Warburton, Adami, McNeill, Paisley & Appell, P.C., and Ted Anderson.

On May 9, 2000, Loveday's siblings, David B. Archer and Carol Anne Archer-Bugg, instituted guardianship proceedings in Bexar County. The trial court assigned case number 2000–PC–1460 to the Bexar County guardianship proceeding. The trial court [2] entered a number of orders appointing representatives. First, on August 8, 2000, the trial court appointed A. Chris Heinrichs as attorney ad litem. Next, on October 23, 2000, the trial court appointed Douglas C. Young as guardian ad litem. Then, on February 1, 2001, the trial court appointed Rucker as temporary guardian of the person. Also, on February 5, 2001, the trial court appointed J.R. Hamilton as temporary guardian of the estate. The order appointing Hamilton gave him the authority, among other things, to "marshal and gather the assets of John R. 'Jack' Archer and to report to the Court as to the assets which comprise the Estate and property of John R. 'Jack' Archer" and "[s]ubject to further court approval, to take such further actions with respect to the Estate, assets and property of John R. 'Jack' Archer as may be warranted or required to properly manage and administer such assets and property."

After the appointment of these representatives, on November 8, 2001, Loveday filed three separate lawsuits in Cause No. 2000–PC–1460: [3] (1) a legal malpractice and breach of fiduciary duty action against the attorneys who had helped Archer alter

2. The Honorable Sandee Bryan Marion

3. Although filed as separate lawsuits, the court docketed them in the guardianship proceeding as 2000–PC–1460. On December 11, 2001, the trial court severed these petitions from the guardianship proceeding, creating the "A" case with the new case number 2000–PC–1460–A.

his estate plan and set up the trust (Hearne, Leshin and his firm, Adami and his firm, and Anderson) as well as Archer's attorney ad litem (Heinrichs) (collectively, "the lawyer defendants"); (2) an action against Hamilton pursuant to section 772 of the Probate Code, alleging that Hamilton had breached his fiduciary duty to Archer while he was temporary guardian of the estate; and (3) an emotional distress action against Anderson and Rucker, alleging that they had caused Archer emotional distress. This appeal involves the first case, the malpractice case against the lawyer defendants.

In her petition alleging malpractice and breach of fiduciary duty, Loveday alleges that she has standing to bring suit on behalf of Archer's temporary guardian:

> The Plaintiff, who is Jack Archer's niece, is a person interested in Jack Archer's estate and therefore has standing to bring this lawsuit. The Plaintiff has standing to bring a derivative action on behalf of Hamilton, the Temporary Guardian of Jack Archer's estate, because Hamilton has failed and/or refused to prosecute this lawsuit.

The lawyer defendants responded by arguing that Loveday lacked standing and capacity to bring the action and moving for the trial court to dismiss Loveday's claims. While the lawyer defendants' motions were pending, on April 16, 2002, the trial court[4] removed Hamilton as temporary guardian of the estate and appointed Richard Tinsman as successor temporary guardian of the estate. The order appointing Tinsman gave him the power to "marshal and gather the assets of John R. 'Jack' Archer, and to report to the Court as to the assets which comprise the Estate and property of John R. 'Jack' Archer" and "[s]ubject to further Court approval, to manage and administer such assets and property and to take all such further actions with respect to the Estate, as may be warranted or necessary." Tinsman entered a one-year limitation tolling agreement with the lawyer defendants, effective April 24, 2002. In an order signed May 31, 2002, the trial court gave Tinsman permission to sign and file the limitation tolling agreement with the court.

■ On May 2, 2002, the trial court held a hearing on the lawyer defendants' pleas in abatement.[5] The lawyer defendants argued that Loveday lacked standing and capacity to bring a derivative suit against them as long as there was a guardian of the estate who could bring suit. At the lawyer defendants' request, the trial court took judicial notice of the pleadings, motions, and orders in the "A" case and the guardianship case. Leshin's attorney also offered the Archer trust indenture as an exhibit and Hearne's testimony to authenticate it. Loveday's attorney offered the trust indenture, the petition against the lawyer defendants, and the petition against Rucker and Anderson. At the hearing, the trial court asked Loveday's attorney, "[A]s long as there's a guardian of the estate who has the potential to bring the action ... would that still allow you to bring a derivative suit?" Later, the trial court ruled that the lawyer defendants should be dismissed from the case and asked for a proposed order. In an order dated July 3, 2002, the trial court granted

---

4. The Honorable Tom Rickhoff

5. Although the lawyer defendants (except Heinrichs) titled their respective motions as pleas in abatement, we do not look to the form or caption of a pleading but to the substance of a motion to determine the relief sought. *Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 601 (Tex.1999). Here, the substance of the motions argued that Loveday lacked both standing and capacity and that her claims should be dismissed.

the lawyer defendants' motions and dismissed Loveday's claims. That same day, the trial court also discharged Tinsman as temporary guardian and appointed Mark Murray as temporary guardian of the estate. The order appointing Murray gave him the power to "marshal and gather the assets of John R. 'Jack' Archer and to report to the Court as to the assets which comprise the Estate and property of John R. 'Jack' Archer, the location of each of such assets and the value of such assets" and "[s]ubject to further Court approval, to manage and administer such assets and property and to take all such further actions with respect to the Estate as may be warranted or necessary."

On July 24, 2002, Loveday requested findings of fact and conclusions of law and submitted proposed findings and conclusions. On July 31, 2002, Loveday filed a notice of appeal, indicating her intent to appeal from the trial court's order dismissing her claims. On August 21, 2002, Loveday filed a notice of past due findings of fact and conclusions of law. On September 9, 2002, Loveday moved to sever the claims against the lawyer defendants from the other claims in the "A" case so that the order dismissing the lawyer defendants would become final and appealable. At the hearing on the motion to sever, the trial court[6] refused to issue findings of fact and conclusions of law, noting that the judge[7] who had issued the order dismissing the claims was no longer presiding over the case: "The Judge can't. He's no longer the Judge and I didn't see the trial so, I can't. So there can be no findings or conclusions." The trial court also declined to reconsider Judge Rickhoff's order dismissing the lawyer defendants. The trial

court, however, did grant the motion to sever. In an order dated October 8, 2002, the trial court created the "B" and "C" cases for the claims against Hamilton and the intentional infliction of emotional distress claims, respectively. Only the claims against the lawyer defendants remained in the "A" case. Loveday filed an amended notice of appeal, noting the order of severance and reiterating her appeal of the "A" case claims against the lawyer defendants.

While Loveday's appeal was pending, on December 31, 2002, the trial court appointed Robert S. McEntyre, Jr. as permanent guardian of Archer's estate.

### FAILURE TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW

Loveday argues that the trial court had a duty to file findings of fact and conclusions of law and that she was harmed by the court's failure to do so because she had to guess the *legal* basis for the trial court's ruling. We disagree. A trial court does not err when it fails to issue findings of fact and conclusions of law in a proceeding in which there are no factual disputes to resolve and the legal conclusions have already been stated in the motions. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441–42 (Tex.1997). For example, in a proceeding in which the trial court dismissed the case for lack of jurisdiction based on the pleadings and counsel's argument rather than sworn testimony, findings of fact and conclusions of law would serve no purpose. *See Awde v. Dabeit*, 938 S.W.2d 31, 33 (Tex.1997). As in *Adwe*, here, the lawyer defendants' motions were based on legal grounds: lack of capacity and standing,

---

6. The Honorable Mike Wood

7. After Judge Rickhoff issued the order dismissing Loveday's claims, David Archer and Carol Archer–Bugg, Loveday's siblings and

applicants for guardianship of Archer, sued Rickhoff. Because of this lawsuit, Judge Rickhoff was recused from this case.

and the trial court in this case dismissed Loveday's claims based on the orders, pleadings, and the other documents in the record.[8] Therefore, the trial court did not err in failing to issue findings of fact and conclusions of law because this was a proceeding in which findings and conclusions would have served no purpose.

## LOVEDAY'S ABILITY TO BRING SUIT

### A. A Guardian's Failure or Refusal to Act?

█ Loveday alleged in her petition that she has standing to bring the lawsuit on behalf of the temporary guardian because he had failed or refused to prosecute the claims against the lawyer defendants:

> 2.3 *Standing:* The Plaintiff, who is Jack Archer's niece, is a person interested in Jack Archer's estate and therefore has standing to bring this lawsuit. The Plaintiff has standing to bring a derivative action on behalf of Hamilton, as Temporary Guardian of Jack Archer's estate, *because Hamilton has failed and/or refused to prosecute this lawsuit.*

(emphasis added).

█ Generally speaking, only the guardian of the ward's estate may bring a lawsuit on behalf of a ward. *See* TEX. PROB. CODE ANN. § 773 (Vernon 2003) ("A guardian of a ward's estate appointed in this state may institute suits for the recovery of personal property, debts, or damages and suits for title to or possession of land or for any right attached to or growing out of the same or for injury or damage

done."); *id.* § 768 (Vernon Supp.2005) ("The guardian of the estate of a ward is entitled ... to bring and defend suits by or against the ward ..."). Despite not being Archer's guardian, Loveday argues that she has "derivative" standing to bring suit on behalf of the guardian because the temporary guardian failed or refused to prosecute the lawsuit.

In support of her argument, Loveday cites to the following cases: *Chandler v. Welborn,* 156 Tex. 312, 294 S.W.2d 801, 806 (1956); *Burns v. Burns,* 2 S.W.3d 339, 342 (Tex.App.-San Antonio 1999, no pet.); *In re Estate of York,* 951 S.W.2d 122, 127 (Tex.App.-Corpus Christi 1997, no writ); *Interfirst Bank–Houston, N.A. v. Quintana Petroleum Corp.,* 699 S.W.2d 864, 874 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Quada v. Quada,* 396 S.W.2d 232, 234 (Tex.Civ.App.-Texarkana 1965, no writ); *Uehlinger v. State,* 387 S.W.2d 427, 430 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.).

In response, Appellee Heinrichs points out that four of the six cases cited by Loveday involve decedents' estates, not guardianships. *See Chandler,* 294 S.W.2d at 806; *Burns,* 2 S.W.3d at 342; *In re Estate of York,* 951 S.W.2d at 127; *Interfirst Bank–Houston,* 699 S.W.2d at 874. Further, Heinrichs notes that the two guardianship cases cited by Loveday involved a guardian having a conflict of interest with the ward.[9] *See Quada,* 396 S.W.2d at 234; *Uehlinger,* 387 S.W.2d at 430. Indeed, the two guardianship cases cited by Loveday do not apply Loveday's

8. At the hearing, the trial court did take judicial notice of some pleadings and heard brief testimony from Rucker (Archer's care giver) and Hearne (past-guardian ad litem). Rucker discussed the possibility of Archer meeting with his brother (Loveday's father) in an attempt to bring the brothers back together. Hearne authenticated the trust indenture document. None of the evidence presented, however, had any bearing on the legal issues of standing and capacity.

9. Heinrichs emphasizes that, here, Loveday did not allege in her petition that the temporary guardian had a conflict of interest with Archer, the ward.

proposed "representative failing to act" standard.

■ Additionally, Heinrichs emphasizes that there is an important distinction between cases involving decedent estates and guardianship proceedings, and "[i]t would be a mistake to simply overlay Texas guardianships with the law of decedents' estates." We agree. In the context of a decedent's estate, while an administration is pending, generally the heirs are not entitled to maintain a suit for the recovery of property belonging to the estate. However, in *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 806 (1956), the Texas Supreme Court recognized an exception to the general rule: when it appears that the administrator will not or cannot act, or that his interest is antagonistic to that of the heirs desiring to sue, the heir may maintain a suit. *Id.* The court reasoned that it had already recognized an exception for creditors of a decedent, holding that under certain circumstances, creditors of a decedent must be permitted to bring suit for the protection of their interest in the estate. *Id.* It concluded that such an exception should also apply to heirs to protect their property interest in the estate. *Id.*

■ Unlike heirs who have a present property interest in the estate, in the context of guardianships, a relative (like Loveday) has no property interest in the guardianship. Under section 601(15) of the Probate Code, Loveday may be an "interested person," and as an interested person, she could seek removal of the temporary guardian and bring a action against the guardian for damages. *See* Tex. Prob. Code Ann. § 601(15) (Vernon Supp.2005) (" 'Interested persons' or 'persons interested' means an heir, devisee, spouse, credi-tor, or any other person having a property right in, or claim against, the estate being administered or a person interested in the welfare of an incapacitated person, including a minor."); *id.* § 761(a) (providing that under certain conditions, the court may remove a guardian on motion of any interested person); *id.* § 772 (Vernon 2003) ("If the guardian wilfully neglects to use ordinary diligence, the guardian and the sureties on the guardian's bond shall be liable, *at the suit of any person interested in the estate,* for the use of the estate, for the amount of the claims or for the value of the property that has been lost due to the guardian's neglect.") (emphasis added). However, a relative like Loveday should not (absent showing that the guardian has a conflict of interest with the ward) [10] be able to bring a lawsuit on the guardian's behalf, thereby circumventing the bonded guardian who owes a fiduciary duty to the ward. Because Loveday had no legal right to bring the claim on behalf of the temporary guardian, the trial court did not err in dismissing Loveday's claims against the lawyer defendants.

### B. Standing and Capacity

■ Loveday also argues that because any defect is one of capacity, not standing, we should remand this cause and order the trial court to give her an opportunity to amend her petition. Because we believe that Loveday lacked both standing and capacity, we hold that the trial court did not err in dismissing Loveday's claims.

■ A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.,* 46 S.W.3d 880, 884 (Tex.2001). "Standing" is a party's

---

10. In her petition, Loveday pled that she had standing because the temporary guardian had failed or refused to act. She did not plead that he had a conflict of interest, nor did she present evidence of such a conflict at the hearing.

justiciable interest in the suit and is a component of subject matter jurisdiction. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661–62 (Tex. 1996). In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005). Standing focuses on who may bring an action, *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 708 (Tex.2001), and is determined at the time suit is filed in the trial court. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 n. 9 (Tex.1993). Without standing, a court lacks subject matter jurisdiction to hear the case. *Waco I.S.D. v. Gibson,* 22 S.W.3d 849, 850 (Tex.2000); *Tex. Ass'n of Bus.,* 852 S.W.2d at 445. As such, it cannot be waived and can be raised the first time on appeal. *Waco I.S.D.,* 22 S.W.3d at 850; *Tex. Ass'n of Bus.,* 852 S.W.2d at 443–44.

A plea to the jurisdiction is proper to challenge a party's lack of standing. *M.D. Anderson Cancer Ctr.,* 52 S.W.3d at 710–11; *Waco ISD,* 22 S.W.3d at 850. A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action based on lack of subject-matter jurisdiction without regard to the merits of the claim. *Bland I.S.D. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Bishop v. Bishop,* 74 S.W.3d 877, 878 (Tex.App.-San Antonio 2002, no pet.). The plaintiff bears the burden of alleging facts that affirmatively show the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus.,* 852 S.W.2d at 446; *Bishop,* 74 S.W.3d at 878. Because the question of subject-mat-

ter jurisdiction is a legal question, we review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *Bishop,* 74 S.W.3d at 878.

A plaintiff must also have the capacity to pursue a claim. *Lovato,* 171 S.W.3d at 849. "Capacity" is a party's legal authority to act. *Nootsie,* 925 S.W.2d at 661. Unlike standing, which may be raised at any time, the burden is on the defendant to challenge capacity by a verified pleading in the trial court or it is waived. *Lovato,* 171 S.W.3d at 849, 853 n. 7.

Here, Loveday lacks both standing and capacity. Loveday, however, argues that any defect is merely one of capacity and as such, she should have an opportunity to amend her petition.[11] In support of her argument, Loveday relies on *Austin Nursing Center, Inc. v. Lovato,* 171 S.W.3d 845 (Tex.2005). *Lovato,* however, is distinguishable from the facts presented here. In *Lovato,* the plaintiff filed a survival action on behalf of her mother's estate, alleging that she was the "Personal Representative" of the estate, but also that "no administrator [of the estate] ha[d] been appointed." *Id.* at 847 (alterations in original). The supreme court held that even though the plaintiff had not been appointed administrator at the time suit was filed, because she was later appointed "Independent Administratrix" of the estate, the defect in capacity was cured. *Id.* at 853. Here, however, at the time she filed suit, Loveday was not the temporary guardian, and she has not since "cured" the defect by being appointed guardian. Instead, Loveday is attempting to stand in the

---

11. Although Loveday argues that she has derivative capacity in her brief on the merits, we note that in her reply brief and supplemental briefing letter to the court, she repeatedly argues that she also has derivative standing because the guardian failed or refused to prosecute the lawsuit against the lawyer defendants.

shoes of the guardian because he has failed or refused to act. If Loveday were correct in her assertion that any defect was merely one of capacity and not one of both standing and capacity, then *any person* could file suit on behalf of a guardian and that guardian would have the burden of showing that the person lacked capacity to bring suit. Or, if the guardian was not a party to the litigation, he would have to intervene or rely on the defendants to show lack of capacity. Such reasoning conflicts with the Probate Code, which allows only a guardian to bring suit on behalf of a ward and which creates a fiduciary relationship between the guardian and the ward. We, therefore, hold that because Loveday lacked both standing and capacity to bring the claims against the lawyer defendants, the trial court did not err in dismissing Loveday's claims.[12]

## CONCLUSION

Because Loveday lacked both standing and capacity to bring the claims against the lawyer defendants on behalf of the temporary guardian, we affirm the judgment of the trial court.

---

12. Loveday also argues that because standing does not apply and the issue is really just one of capacity, the trial court erred in granting the pleas in abatement based on capacity because the lawyer defendants presented no evidence in support of their argument that Loveday lacked capacity. However, because Loveday also lacked standing, the lawyer defendants were *not required* to bring forth evidence to show lack of standing. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004) ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."); *M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 710–11.