

# NUMBER 13-13-00149-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RONDA KIRKPATRICK,                                                          Appellant,

v.

KENNETH A. CUSICK,                                                          Appellee.

## On appeal from the County Court at Law No. 1
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Ronda Kirkpatrick, challenges the trial court's summary judgment in favor of appellee, Kenneth A. Cusick, in a dispute related to right-of-survivorship bank accounts opened by Ronda's deceased mother, Mary Gwendolyn Cress ("Gwen"). We reverse and remand.

# I. BACKGROUND

For several years, Gwen entrusted her son, Sam Cress, to manage her finances. In 2009, Gwen's health began to deteriorate, and she began to question Sam's financial decisions. Eventually, Gwen asked her daughter Donna Cusick and Donna's husband Kenneth, an Assistant United States Attorney in Corpus Christi, Texas, to help her secure control of her finances away from Sam. On July 31, 2009, Sam told Gwen that he would no longer handle her financial affairs, and he gave her a cashier's check representing the funds in his control that belonged to Gwen. Gwen then decided to rewrite her will to disinherit Sam and remove Sam as the executor of her estate. Ronda and Donna assisted Gwen in removing Sam from positions of authority with respect to her financial accounts.

In early August 2009, Gwen asked Kenneth to be the executor of her will and to take over management of her financial accounts. Kenneth agreed. Gwen then opened two joint bank accounts at Prosperity Bank in Corpus Christi containing a total of approximately $282,000, with Kenneth named as joint tenant with a right of survivorship. Gwen executed the documents to open the accounts on August 5, 2009, and Kenneth signed them later that day. Later in August 2009, Gwen executed a new will naming Donna and Ronda as primary beneficiaries and Kenneth as executor; she also executed a power of attorney designating Kenneth as her attorney-in-fact.

Gwen died in September 2009. At that point, pursuant to the terms of the joint accounts, Kenneth became sole owner of the funds on deposit therein. Subsequently, he wrote a $12,500 check to each of Ronda and Donna.[1] He then closed the accounts

---

[1] Kenneth made at least one other distribution to Ronda out of the account funds, but the record does not reveal the precise amount.

2

and transferred the remaining funds to other accounts that he owned.

Believing that she was entitled to half of the funds in the accounts set up by her deceased mother, Ronda filed suit against Kenneth and Donna on March 18, 2011. Her original petition asserted causes of action of fraud, unjust enrichment, breach of trust under Texas Property Code section 114.001, and breach of fiduciary duty. Kenneth answered and filed a motion for partial summary judgment "on all of [Ronda]'s claims and causes of action related to the creation of an alleged equitable trust."[2] In the motion, Kenneth asserted that "upon the death of [Gwen], all sums in the account vested in [Kenneth] belonged to him, and he owed no fiduciary duty to [Ronda] or anyone else." Therefore, according to the motion, "no genuine issue of material fact exists that [Kenneth] committed fraud, breach of trust, breach of fiduciary duty, or any of the other causes of action alleged by [Ronda]." The motion further argued that "no evidence exists that [Gwen] suffered any kind of mental incapacity at the time she opened the bank accounts" or "was coerced in any way into opening the bank accounts or naming [Kenneth] as a joint owner with right of survivorship and as a pay-on-death beneficiary."[3] In its prayer for relief, the motion asked that "[Ronda] take nothing by way of this lawsuit against him."

In support of his summary judgment motion, Kenneth attached copies of the signature cards corresponding to the bank accounts at issue. On each document, a box next to the term "Multiple-Party Account With Right of Survivorship" is checked. The

---

[2] Donna filed a separate motion for summary judgment which was granted. Ronda later non-suited her claims against Donna. Donna is not a party to this appeal.

[3] In another part of the motion, Kenneth asserts: "There is no evidence that [Gwen] failed to understand what she was doing when she opened the bank accounts and named [Kenneth] joint owner with right of survivorship and pay-on-death beneficiary, that she was not of sound mind to do so, or that she was coerced in any way."

cards are signed by both Gwen and Kenneth. Kenneth's motion also attached a bank statement corresponding to one of the accounts opened by Gwen, dated August 31, 2009 and showing a balance of $272,392.57.

The summary judgment evidence offered by Kenneth also included deposition testimony by Roxana Perez, a banking officer with Prosperity Bank in Corpus Christi. Perez stated that Gwen came to the bank by herself in the summer of 2009 and asked to open a checking account and a money market account. Perez prepared the paperwork and brought them to Gwen at the retirement home where she lived. Gwen gave Perez a check drawn on a Frost Bank account in order to fund the two new accounts. According to Perez, Gwen was "absolutely" decisive about what she wanted to do and she did not have difficulty communicating. Perez stated that she did not suggest that Gwen put Kenneth on the account, but rather, Gwen understood the nature of the account and decided on her own to make Kenneth a co-owner. Perez agreed that she took "special care" to communicate to Gwen the difference between a survivorship account and a joint account, and that Gwen had no hesitation or doubt in what she was doing by making Kenneth a co-owner of the account with a right of survivorship. Perez testified:

> [Gwen] was a very sharp lady. She was in full—she had her full faculties. I mean I'm very positive of that, and I explained what a multi-party account means, and I explained what an authorized signer means, and she—this is the one that she chose. I explained the different types of accounts and she told me what she wanted.
>
> . . . .
>
> She told me she wanted [Kenneth] on the account, and I asked her, in what capacity, as an authorized signer or as an owner of the account? She says, as an owner of the account.

4

. . . .

> When I explained to her what a multi-party account was, I specifically told her that if something were to happen to her upon her death, the money would go to her—to him. . . . And she said, that's fine, he's the executor of my estate. So she said, that's fine.

According to Perez, Gwen did not tell her whether she had an agreement with Kenneth or Donna as to what would be done with the account funds in the event of Gwen's death. Perez denied having ever told anyone that the accounts were set up for the benefit of Ronda and Donna.

Ronda filed a response to Kenneth's motion arguing that summary judgment should be denied because there are questions of material fact as to "(a) the unfairness of the transaction by which [Kenneth] was designated as joint tenant with right of survivorship in [Gwen]'s checking accounts, and (b) [Kenneth]'s breach of fiduciary duty." In particular, she claimed that there was a fact issue as to whether Kenneth "entered into a formal fiduciary relationship" with Gwen by "(1) agreeing to help handle her financial affairs, (2) agreeing to be named as joint owner with right of survivorship on her bank accounts, (3) taking power of attorney, and (4) agreeing to be the executor of her last will and testament." Citing *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502 (Tex. 1980), Ronda further asserted that, because Kenneth accepted a gift from a person to whom he owed fiduciary duties, the burden was on him to prove that the transaction was fair.

Ronda's response included deposition testimony by Kenneth in which he acknowledged that he did not personally explain to Gwen the ramifications of naming him as a joint tenant on the bank accounts. Kenneth testified that, when Gwen asked him and Donna to assume control of her financial affairs, he "understood that [Gwen]

5

was redesignating and her—her daughters were each going to get a[n equal] share." Kenneth agreed that "that was consistent with [Gwen's] intent on how things were to be shared between Ronda and Donna when she died." Kenneth further testified as follows in response to questions posed by Ronda's counsel:

> Q.    Isn't it true that you told Ronda and [Ronda's husband Jon] Kirkpatrick that your intention was after [Gwen]'s death for the money in those two accounts to be divided equally between Ronda and Donna?
>
> A.    My original intent was after all administration of estate expenses, taxes, fees, anything related is—is paid, then as the beneficiaries, those two should each receive the—the residue.
>
> Q.    Okay. That was your original plan?
>
> A.    Yes.
>
> Q.    And you told that to [Jon] and [Ronda] before [Gwen] died, didn't you?
>
>         . . . .
>
> A.    If I put it in—as a condition if she behaved, let me do my job as executor, pay everything off, assist and not obstruct, yes, that her and Donna would share in what was left.[4]

Kenneth stated that he made payments to Ronda after Gwen's death because he "was trying to show my good faith and that that was my intent to follow through with that." He characterized the payments as "gifts." He further conceded that he used some of the account funds for personal "expenditures" because "[i]t's my money."

Ronda's response to the summary judgment motion also included affidavits by herself and her husband. Ronda stated that her mother "specifically told me she was splitting everything she had equally between Donna and me." Both Ronda and her

---

[4] Kenneth later denied that he told Ronda prior to Gwen's death of his "original intent" regarding distribution of the account funds.

6

husband averred that Kenneth assured them, prior to Gwen's death, that he was being named on the accounts "solely for the purpose of giving him the ability to sign checks on her accounts in order to pay her bills in the event she could no longer do it herself." According to Ronda, Kenneth continued, after Gwen's death, to tell her that he was going to distribute the estate funds in equal shares to Donna and Ronda after paying estate expenses. Ronda averred that Kenneth told Gwen, on her death bed, "don't worry I'll take care of your girls."

The trial court granted Kenneth's motion for summary judgment. Ronda then filed a notice of non-suit pertaining to "[a]ll claims against [Kenneth] for violation of fiduciary duties owed to [Ronda] before the death of [Gwen]." The notice stated:

> This nonsuit does not affect or dismiss [Ronda]'s claims against [Kenneth] for violation of fiduciary duties [owed] to [Gwen] before her death nor for violations of fiduciary duty committed by [Kenneth] in the performance of his duties as executor of [Gwen's estate], all of which [Ronda] continues to assert in this cause.

Ronda later filed a separate notice non-suiting "all claims and causes of action that have not been previously nonsuited or adjudicated by summary judgment in this cause." This appeal followed.

## II. DISCUSSION

### A.     Standard of Review

Kenneth's motion for summary judgment does not explicitly state whether it was brought on traditional or no-evidence grounds. However, the motion relies heavily on Perez's deposition testimony. *Cf.* TEX. R. CIV. P. 166a(i) (stating that a no-evidence motion for summary judgment is made "without presenting summary judgment evidence"); *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004) (noting that the

7

attachment of evidence does not convert a no-evidence motion into a traditional motion for summary judgment). Moreover, though the motion asserts that "no evidence exists that [Gwen] suffered any kind of mental incapacity" or "was coerced in any way into opening the bank accounts," it neither cites rule of civil procedure 166(a)(i) nor specifies which elements of Ronda's causes of action, if any, lack evidentiary support. *Cf.* TEX. R. CIV. P. 166a(i) (stating that a no-evidence motion for summary judgment "must state the elements as to which there is no evidence"). Accordingly, we construe Kenneth's motion as asserting traditional grounds for summary judgment only. *See* TEX. R. CIV. P. 166a; *see also Richard v. Reynolds Metal Co.*, 108 S.W.3d 908, 911 (Tex. App.— Corpus Christi 2003, no pet.) (noting that, when it is not readily apparent that summary judgment is sought on no-evidence grounds, "the court should presume that it is filed under the traditional summary judgment rule and analyze it according to those well-recognized standards").

A motion for traditional summary judgment must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review the trial court's granting of a traditional motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100

8

S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.). We will affirm a summary

judgment if any of the theories presented to the trial court and preserved for appellate

review are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157

(Tex. 2004).

**B.   Applicable Law**

**1.   Right of Survivorship Accounts**

Section 439 of the probate code provides the exclusive means for creating a right

of survivorship in joint accounts in Texas. *Stauffer v. Henderson*, 801 S.W.2d 858, 862

(Tex. 1990). The statute provides, in relevant part:

> Sums remaining on deposit at the death of a party to a joint account
> belong to the surviving party or parties against the estate of the decedent
> if, by a written agreement signed by the party who dies, the interest of
> such deceased party is made to survive to the surviving party or parties.
> Notwithstanding any other law, an agreement is sufficient to confer an
> absolute right of survivorship on parties to a joint account under this
> subsection if the agreement states in substantially the following form: "On
> the death of one party to a joint account, all sums in the account on the
> date of the death vest in and belong to the surviving party as his or her
> separate property and estate."

TEX. PROB. CODE ANN. § 439(a) (West 2003). The statute "makes a written agreement

determinative of the existence of a right of survivorship in a joint account." *Stauffer*, 801

S.W.2d at 863. "If such agreement is complete and unambiguous, then parol evidence

is inadmissible, as with written agreements generally, to vary, add to or contradict its

terms." *Id.* Furthermore,

> no presumption can be created to contradict the agreement or to supply a
> term wholly missing from its provisions. Any such presumption would
> violate both the parol evidence rule by necessitating admission of extrinsic
> evidence to rebut the presumption, and the express prohibition of section
> 439(a) against inferring a right of survivorship from the mere creation of a
> joint account. Thus, if the terms of an agreement pertaining to a joint

9

account are clear, the parties may not introduce extrinsic evidence of the parties' intent.

*Id.* at 863–64.

## 2. Breach of Fiduciary Duty

There are two types of fiduciary relationships in Texas: (1) a formal fiduciary relationship arising as a matter of law, such as between partners or an attorney and a client; and (2) an informal or confidential fiduciary relationship, arising from a moral, social, domestic, or merely personal relationship where one person trusts in and relies upon another. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992); *Smith v. Deneve*, 285 S.W.3d 904, 911 (Tex. App.—Dallas 2009, no pet.).[5]

The determination of the existence of a confidential fiduciary relationship is normally for the trier of fact. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). A confidential fiduciary relationship may exist where influence has been acquired and abused, or where confidence has been reposed and betrayed. *Crim Truck*, 823 S.W.2d at 594. A family relationship, while it is considered as a factor, does not by itself establish a fiduciary relationship. *Moore*, 595 S.W.2d at 508. As the Texas Supreme Court stated in *Moore*:

> [W]here trust is reposed and substantial benefits gained equity will recognize that the beneficiary in such transactions is a fiduciary, and as such is under the fiducial obligation of establishing the fairness of the transaction to his principal. . . . [T]he imposition by equity of a fiduciary relationship in such circumstances does no more than cast upon the profiting fiduciary the burden of showing the fairness of the transactions.

---

[5] The relationship between an executor and the estate's beneficiaries is one that gives rise to a fiduciary duty as a matter of law. *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). However, Ronda non-suited her claim that Kenneth violated fiduciary duties owed to her as a beneficiary of Gwen's estate. Accordingly, that claim is not before us on appeal.

10

*Id.* at 508–09. Texas appellate courts have held, consistent with *Moore*, that when a fiduciary accepts a gift or bequest from the principal, a burden is placed on the fiduciary to demonstrate the fairness of the transaction. *See Young v. Fawcett*, 376 S.W.3d 209, 216 (Tex. App.—Beaumont 2012, no pet.); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting that a fiduciary has a "duty to deal fairly with the principal in all transactions between them"); *Gatlin v. GXG, Inc.*, No. 05-93-01852-CV, 1994 WL 137233, at *5 (Tex. App.—Dallas Apr. 19, 1994, no writ) (per curiam); *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ) (noting that "[a]ll transactions between the fiduciary and his principal are presumptively fraudulent and void").

In establishing the fairness of a transaction involving a fiduciary, some of the most important factors are: (1) whether there was full disclosure regarding the transaction, (2) whether the consideration (if any) was adequate, (3) whether the beneficiary had the benefit of independent advice, (4) whether the fiduciary benefitted at the expense of the beneficiary, and (5) whether the fiduciary significantly benefitted from the transaction as viewed in light of circumstances existing at the time of the transaction. *Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

## C. Analysis

As a result of Ronda's notices of non-suit, filed after partial summary judgment was rendered, the only one of Ronda's original claims at issue in this appeal is her claim that Kenneth violated fiduciary duties owed to Gwen before Gwen's death and in his performance as executor of Gwen's estate. Kenneth bore the initial burden, as a

movant for traditional summary judgment, to establish his entitlement to judgment as a matter of law on this claim. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co.*, 73 S.W.3d at 215. "The non-movant has no burden to respond to or present evidence regarding the motion until the movant has carried its burden to conclusively establish the cause of action or defense on which its motion is based." *State v. $90,235.00 in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013), *Petree v. S. Farm Bureau Cas. Ins. Co.*, 315 S.W.3d 254, 258 (Tex. App.—Corpus Christi 2010, no pet.). Therefore, if Kenneth's motion did not *by itself* establish his entitlement to judgment as a matter of law, then Ronda had no burden to produce evidence generating a fact issue. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) ("Summary judgments must stand on their own merits. Accordingly, the nonmovant need not respond to the motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment.").

Here, Kenneth's summary judgment motion relied exclusively on the fact that Gwen knowingly and voluntarily named Kenneth as a joint tenant with right of survivorship on the two Prosperity Bank accounts. The evidence attached to his motion does, indeed, establish that fact. Perez's deposition testimony shows that she properly informed Gwen of the ramifications of naming Kenneth as a joint tenant with right of survivorship, and that Gwen voluntarily executed the forms establishing the accounts. But this fact alone does not establish Kenneth's entitlement to judgment as a matter of law on Ronda's claim. That is, even if Gwen knowingly and voluntarily named Kenneth as a joint tenant with right of survivorship on the bank accounts, that fact by itself does

12

not conclusively demonstrate that Ronda could not prove her pleaded allegations that Kenneth breached a fiduciary duty to Gwen.

Two cases cited by Ronda are instructive in this regard. In *Morehead v. Gilmore*, 2003 WL 1848724 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op.), the First District Court of Appeals considered a similar fact pattern and found sufficient evidence to support a finding of a fiduciary relationship. In that case, the Gilmores named their daughter Patsy as executor of their will and as their attorney-in-fact. *Id.* at *1. The Gilmores began transferring assets to Patsy, and they named Patsy as a joint tenant with right of survivorship on two certificate of deposit accounts. *Id.* Patsy told her seven siblings that any of their parents' money that was available at their deaths would be split equally among the siblings. *Id.* However, when the Gilmores died, Patsy kept all the funds in the accounts for herself. *Id.* at *2. The court held:

> The evidence suggests that Mr. Gilmore and appellees relied on Patsy's assertions that she would assist Mr. and Mrs. Gilmore with their finances, and that the assets were to be managed by Patsy for the benefit of all of the children. We hold that, in this situation, where the evidence shows that, in a family setting, Patsy encouraged appellees to rely on her management of their parents' assets, and where there is evidence that appellees did rely on Patsy to manage the assets, there is some evidence of a fiduciary relationship.

*Id.* at *3 (citing *Moore*, 595 S.W.2d at 507).

Also relevant here is *Vogt v. Warnock*, 107 S.W.3d 778 (Tex. App.—El Paso 2003, pet denied), in which the El Paso Court of Appeals considered whether a breach of fiduciary duty action could be sustained by the estate of Barton Warnock against Rebecca Vogt. Warnock named Vogt, a woman forty years his junior, as his attorney-in-fact; he later transferred several parcels of real property to her. *Id.* at 780. After Warnock died, the executor of his estate sued Vogt, alleging several causes of action.

*Id.* at 781.  At trial, the estate dropped all of its claims except for the fiduciary duty claim, and it "stipulated that [Warnock] had done what he wanted to do in transferring property, and his competency and undue influence were no longer questions that would be submitted to the jury."  *Id.*  The trial court ruled as a matter of law that Vogt was Warnock's fiduciary, thereby shifting the burden of proof to Vogt to prove that the property transfers to her were fair.  *Id.*  The jury then found after trial that some of the transfers were unfair, and the trial court rendered judgment voiding those transfers.  *Id.* On Vogt's appeal, the court of appeals affirmed the trial court's legal conclusion that Vogt was a fiduciary solely on the basis of the power of attorney, even though Vogt never actually performed any actions as Warnock's attorney-in-fact.  *Id.* at 782.[6]

Applying the analysis used by *Morehead* and *Vogt*, Ronda could establish that Kenneth owed a fiduciary duty to Gwen and breached that duty, despite the fact (as established by Kenneth's summary judgment evidence) that Gwen knowingly and voluntarily made Kenneth a joint tenant with right of survivorship on the Prosperity Bank accounts.[7]  For example, if Ronda produced evidence, in accordance with her

---

[6] *Vogt* is partially distinguishable from the instant case in that the disputed transfers there took place *after* the decedent had executed the power of attorney.  *Vogt v. Warnock*, 107 S.W.3d 778, 780 (Tex. App.—El Paso 2003, pet denied).  Here, it is undisputed that Gwen named Kenneth as joint tenant on the bank accounts prior to naming Kenneth as her attorney-in-fact.  Nevertheless, *Vogt* is relevant because it establishes that a fiduciary bears a burden to prove that any transactions with the principal are fair, even when it is "stipulated that [the decedent] had done what he wanted to do in transferring property, and his competency and undue influence were no longer questions . . . ."  *Id.* at 781.

[7] As it turned out, the evidence produced by Ronda in response to Kenneth's motion showed only that:  (1) Gwen told Ronda she intended to "split[] everything she had equally" between her two daughters; (2) Kenneth assured Ronda and her husband that he was only being named on the accounts so that he could pay Gwen's bills in the event of her incapacity; and (3) Kenneth originally intended to give Ronda half of the account funds after paying estate expenses.

Kenneth contends that this evidence is inadmissible because it constitutes parol evidence seeking to "vary, add to or contradict" the terms of the joint accounts.  *See Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990); *Punts v. Wilson*, 137 S.W.3d 889 (Tex. App.—Texarkana 2004, no pet.); *see also* TEX. PROB. CODE ANN. § 439(a) (West 2003).  We disagree that this was inadmissible parol evidence because it was not intended to "vary, add to or contradict" the terms of the accounts.  *See*

14

pleadings, that Kenneth owed a fiduciary duty to Gwen as a result of his "(1) agreeing to help handle her financial affairs, (2) agreeing to be named as joint owner with right of survivorship on her bank accounts, (3) taking power of attorney, and (4) agreeing to be the executor of her last will and testament," then she could have established that Kenneth owed a fiduciary duty to Gwen as of early August 2009 when he agreed to manage Gwen's finances. The burden would then be placed on Kenneth to establish that any transactions between him and Gwen were fair. *See Moore*, 595 S.W.2d at 508–09.

Kenneth points to *Punts v. Wilson*, 137 S.W.3d 889 (Tex. App.—Texarkana 2004, no pet.), in support of his argument that a breach of fiduciary duty action cannot be based on a facially valid right of survivorship account. In that case, J.W. Kelly named Hubert Wilson as pay-on-death beneficiary of several credit union accounts, as one of two residual beneficiaries of his will, and as the executor of his will. *Id.* at 890. When Kelly died, the other residual beneficiary of his estate, Edward Punts, sued Wilson, claiming that Wilson "breached his fiduciary duty to [Punts] as a beneficiary of the will by paying the [credit union] funds directly to him instead of depositing the funds into Kelly's estate, thereby depriving [Punts] of his fifty percent residual share." *Id.* at 890–91. The Texarkana Court of Appeals concluded that Wilson "did not owe any

_____

*Stauffer*, 801 S.W.2d at 863. Ronda does not dispute that, under the unequivocal terms of the joint accounts, Kenneth became sole owner of the funds in the accounts upon Gwen's death. Instead, the evidence she attached to her summary judgment response was intended to establish that Kenneth owed Gwen a fiduciary duty and breached that duty by accepting joint tenancy of the bank accounts.

In any event, although Ronda's evidence was admissible, we need not address whether it raised an issue of material fact because Kenneth's motion for traditional summary judgment did not, by itself, establish his entitlement to judgment as a matter of law. *See State v. $90,235.00 in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). Accordingly, the burden to produce evidence never shifted to Ronda. *See $90,235.00*, 390 S.W.3d at 292; *see also* TEX. R. CIV. P. 166a(c).

15

fiduciary duty to Punts with regard to the funds in the Credit Union accounts, as they were not included in Kelly's estate." *Id.* at 892. The court further held that, although there was evidence that Kelly told Punts of his intent that Punts have half of the funds under the residual clause of his will, "extrinsic evidence may not be offered to prove intent" of a decedent where the terms of a survivorship account are "complete and unambiguous." *Id.* at 893 (citing TEX. PROB. CODE ANN. § 439(b)).

The fact pattern considered in *Punts* is similar to the one at issue here; however, the case is distinguishable because it involved a claim of breach of fiduciary duty to the *beneficiary* rather than to the decedent. The *Punts* court, in considering whether Wilson owed a fiduciary duty, focused exclusively on the fiduciary duty that arises as a matter of law between an executor and the beneficiaries of an estate. *See id.* at 891 (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996)). Here, on the other hand, Ronda's active claim is a derivative claim, brought on behalf of her deceased mother, that Kenneth breached his fiduciary duty to Gwen. And, crucially, unlike a fiduciary duty owed by an executor to a beneficiary, a fiduciary duty based on a "confidential relationship"—such as the one Ronda alleges that Kenneth owed to Gwen—burdens the fiduciary to demonstrate the fairness of any transaction with the principal. *See Moore*, 595 S.W.2d at 508–09. Accordingly, *Punts* does not compel the granting of Kenneth's summary judgment motion.

Finally, Kenneth contends in his appellee's brief that Ronda lacks standing to assert a breach of fiduciary duty cause of action on behalf of Gwen. Although Kenneth did not make this argument in his summary judgment motion, lack of standing may be raised for the first time on appeal because it implicates the trial court's subject matter

16

jurisdiction. *See, e.g., Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Kenneth cites *Frazier v. Wynn*, 472 S.W.2d 750 (Tex. 1971), for the proposition that "[t]he personal representative of the decedent's estate is the only person entitled to sue to recover estate property." However, the Texas Supreme Court in *Frazier* acknowledged that "[t]here are exceptions" to that general rule. *Id.* at 752. One such exception is recognized in "cases where, there being an administration, it appears that the administrator will not or cannot act, or that his interest is antagonistic to that of the heirs desiring to sue." *Chandler v. Welborn*, 156 Tex. 312, 318, 294 S.W.2d 801, 806 (1956); *In re Estate of Preston*, 346 S.W.3d 137, 163 (Tex. App.—Fort Worth 2011, no pet.); *In re Guardianship of Archer*, 203 S.W.3d 16, 22 (Tex. App.—San Antonio 2006, pet. denied). Kenneth's interest is indisputably antagonistic to Ronda's with respect to her claim that he breached a fiduciary duty owed to Gwen by accepting joint tenancy on Gwen's bank accounts. Accordingly, Ronda has standing to assert the claim on behalf of her deceased mother.

### III. CONCLUSION

We conclude that the trial court erred by granting Kenneth's motion for partial summary judgment. We therefore reverse the judgment and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
19th day of December, 2013.

17